The first case is Avon Nursing and Rehabilitation v. Azar. I believe Mr. Feldman commenced your argument, and I understand that you will have two minutes for rebuttal. Thank you, Your Honor. May it please the Court, Brian Feldman for appellants. Congress chose to mandate that registered nurses bring their expertise to every nursing home survey. Congress rejected proposals to give states discretion or to require nurses only on annual surveys. Congress used precise statutory cross-references in a manner endorsed by five recent Supreme Court cases. The Secretary's final rule flies in the face of Congress's choice. On Jurisdiction First, the Illinois counsel exception permits this suit, not because an administrative law judge could not hold the final rule illegal under 405B, although one couldn't, but because a district judge couldn't do so under 405G. Ask the government, Your Honors, should a 405G district court vacate a determination made by an illegally composed survey team? If the answer remains no, then 405G is illusory, offers no review at all, and the Illinois counsel exception must apply. Second, there's no clear statement stripping Section 1331 jurisdiction for the Medicaid Act challenge. A clear statement from Congress is required, as this Court held in Southern New England Telephone, to withdraw Section 1331 jurisdiction. Not only is there no such statement here, but to the contrary, when Congress enacted Medicare and Medicaid, it did so together in 1965, and in that act chose to strip jurisdiction only for Medicare and not for Medicaid. Respecting that choice will not open the floodgates. Facilities challenging adjudications, like survey results or penalties, will still need to exhaust their administrative remedies before coming to court. Reversing here will allow formal rulemaking challenges under the Medicaid Act to proceed, as in the Seventh Circuit's Illinois counsel case, but not open the floodgates to specific challenges to unexhausted adjudications, as illustrated by the Seventh Circuit's health equity case. Judge, we'll begin the questioning. Thank you. Can I ask you about the Medicaid Act claim, and in particular, the Cathedral Rock case and related cases? They seem to hold that, they express a concern about bringing claims as Medicaid claims in a way that would allow you to end-run the Medicare Act incorporation of 405H. So, I guess I'm trying to understand what your response is to Cathedral Rock. Is it that the Sixth Circuit and the related cases are wrong, or is this case different in your view? So, Your Honor, a few answers to that. First, Cathedral Rock itself is about an unexhausted case where a specific adjudication did not go to the ALJ and the appellate level and went straight to court. That would come out the same here. The real circuit split for rulemaking is between Illinois counsel and the Seventh Circuit and Michigan Association and the Sixth when we submit that the Seventh Circuit got it right. The reason why is ultimately doctrinal, although I will address the policy concerns as well. Doctrinally, a clear statement is required to withdraw jurisdiction, and the Supreme Court has gone so far to say in MIMS that even if there's a rationale for stripping jurisdiction, like the Sixth Circuit purported to find, that quote may fit hand-in-glove with Congress's 1331 should hold firm against mere implication, and that was Justice Ginsburg in the MIMS decision. The two policy arguments that the government and the courts have seized on are, first, that these are substantially identical statutes, and second, that we're talking about duly participating facilities. Both of those arguments could not rise to the level of changing the doctrine, but they're wrong in any event. There's no textual basis for either. The substantially identical argument is anachronistic as well. We're asking the question of what Congress intended in 1965. The answer can't be to shield statutes that were passed in substantially identical fashion 22 years later. Also, that argument leads to an absurd result, which is a rule violating a unique Medicaid Act statute gets struck, but one that is doubly offensive and also violates Medicare is survived. There is no two wrongs make a right theory of jurisdiction. Is there any reason why Congress didn't incorporate 405H into the Medicaid Act? Is there any rationale for it? Because it does seem like it's an odd difference between the two when they're otherwise substantially the same. Yeah, that's an excellent question, Your Honor. Here's what Congress did. They didn't tell us why, but there's, I think, an obvious answer to the question, which is Congress took the existing 405H jurisdictional stripping provision that existed for Social Security. Social Security is 100% federally run. As the courts know well, Social Security beneficiaries will sue the federal government when they don't get their Social Security benefits. So beneficiaries and providers alike would sue Medicare. It made sense to extend the 405H immunity or jurisdiction stripping provision from the Social Security Act to Medicare. Medicaid is a very given beast. Medicaid is a state-run program where beneficiaries and providers who aren't getting paid are likely to, and do all the time, sue the state government. So there was every reason for Congress in 1965 to put Medicare in the same bucket as another 100% federally run program, Social Security, and to put Medicaid in a very different bucket. As to the... Okay, thank you. Oh, sorry, Arne. Thank you. Okay. This is Judge Katzmann, and just a few questions. If we were to agree that we have jurisdiction over the Medicaid Act claims, then just to be clear, your position would be that we could then review the regulation without reaching the issue of our jurisdiction under the Medicare Act? That is correct, Your Honor. The regulation, the final rule was passed under the authority of both Acts, and if this court has jurisdiction under either, it has the ability to vacate the Act. That's correct. And presumably under your view, we could either, as a court, if we agreed with you, I'm not saying that we do, that there is jurisdiction over the Medicaid Act claims, we could either ourselves in the first instance perform that review or remand to the district court to perform that review. Now, my question is, my further question is this, that the statute explicitly, as I read it, compels nurses, certainly with respect to an extended survey, and specifically authorizes a variety of other professions without mentioning nurses for complaint responses. Why doesn't that suggest that there are, in fact, two distinct and really not overlapping requirements that apply in different areas? Three answers, Your Honor. The first is because the cross-reference in G2E1 is precise and covers the whole subsection. The government agrees on pages 30 and 32 of their brief that if subsection, this subsection means subsection G, that includes investigative complaint surveys. The second is that the legislative history supports that reading. At the time that the conference committee decided to take up the language in G2E1, it had before it the status quo where there was no requirement, discretion was left to the states, a House recommendation that all surveys include registered nurses and a Senate amendment that would do what the government argues here, limit registered nurses to those annual surveys, and the conference adopted the House language to require nurses on all the surveys, so this would be a reversal of that. As to the direct conflict that the government cites with irreconcilable inconsistency, as the government says in page 32 of its brief, between G4 and G2E1, it doesn't exist. The reason the government, I submit, goes to the extreme of saying this is a direct conflict is that is the doctrine, under Morton v. Mancari, if two provisions are capable of coexistence, the court must interpret the statute to give each effect. Here there's no inconsistency. G4 says that a special investigative team could be put together, it's permissive, and it could include appropriate healthcare professionals. Why is there no conflict? Three reasons. One, it does not say there can't be a registered nurse on surveys. In fact, two, it says appropriate healthcare professionals, and a registered nurse is, for a survey, an appropriate healthcare professional. And the third reason is that the investigative team, what's governed by G4, is much broader than surveys. The Secretary's Rule of 42 CFR 48-308F explains when a complaint investigation needs to trigger a survey, and it's only when a survey and a survey alone can determine whether a deficiency exists. In those cases, this investigation team under G4 would launch a survey, and if the team didn't include a registered nurse as a standing member, would include a registered nurse on the survey team consistent with G2E1. As to your Honor's initial rule, we would ask the court to reach this decision. You certainly have the discretion, as we've laid out in the reply brief at pages 16 through 17. It's been briefed fully twice. Here and at the district court, it raises a pure legal question. We submit the statutory construction is the easier part of this. The jurisdiction is the more complicated one, and it would create extra burdens for the district court and ultimately another panel of this circuit were we to litigate the statutory construction later. Thank you. And one last question. When I look at the statutory section here, it uses the word subsection. It does it in a few different ways, and G2 in particular is at times referred to as a subsection and at other times as a paragraph. So given that, why shouldn't we conclude that the phrase under this subsection is at least ambiguous? Because the Supreme Court in Sion, Rubin, Southwest General Coons, an area of anti-discrimination committee, so five times over, has explained that distinction, which is that when a term is used without a further qualification, something else in parenthetical that follows, it refers to all of the section or here the subsection to use the terms of Southwest General. As the Supreme Court said in Sion, the court can't quote cherry pick from the material covered by the statutory cross reference. So this isn't a case in which subsection is qualified. And that interpretation, again, moreover, is supported by the legislative history here, in particular, the legislative history at the conference committee level, which is which is particularly persuasive legislative history. Thank you. Judge Loyer. Thank you, Judge Katzmann. So I've got just a few questions. The first is that understanding that you think that the remedy, so to speak, here is illusory, as you put it. Is there anything that prevented Avon from going through the administrative process to challenge this final rule? Yes, Your Honor, which is the law, the case law and the administrative law. Again, we're not complaining about what would have happened at the administrative level. We know what would have happened because in the record of Joint Appendix 269, you have the results when Avon, before the final rule, contested a survey without a registered nurse. And the highest administrative level of the Secretary said that question was irrelevant to determinations. And it would be irrelevant, again, at the administrative level. But so, too, according to the government and all of its briefing to date that we've been able to find and every circuit that's reached this question, it would be irrelevant to a decision under 405G or under the I'm asking about is the process. Is there anything that prevented Avon from going through the process? Understanding that, look, it might be in one sense futile, but we've got an administrative process. We've got to go through it. I don't believe that there is any process in the regulations for any of the plaintiff facilities to bring a rulemaking challenge. The regulations here are very finely designed to permit only certain determinations, what the agency calls in the regulations initial determinations, to trigger an ALJ hearing. And a rulemaking is not an initial determination. Specific survey findings, if they're high enough level, like an immediate jeopardy finding and specific enforcement actions are the only things that can trigger the administrative review process. I would note, though, that at the time of the appeal, before the departmental appeals board, the final rule had been proposed and Avon did, in fact, brief that issue as did CNS before the board. And the board dismissed it because it was irrelevant, as the board says, at page 269. Okay. Now, I also understand that a vast majority of nursing facilities are dually participating facilities. Is that correct? That's not on the record, but that is my general understanding. So my understanding is that as of 2014, about 92% of all nursing facilities are dually participating facilities, and we don't quibble with that. I think the government would be in a better position to have a say on that. So, and I'm thinking about Cathedral Rock, which Spark mentioned, which seems to offer or provide a more or less bright line rule with respect to all nursing facilities that are dually participating facilities. And I wonder if you could give me your thoughts about maybe a different less bright line test, which is a predominant test that looks at the nature of the challenge. So if to the extent that the challenge is primarily or primarily arises under the Medicare Act, then the jurisdiction stripping provisions of 4 or 5H ticket, if it's primarily a challenge under the Medicaid Act, because of the facts involved, for example, and the nature of circumstances that led to the challenge, then it's not. Now, that may not help in this case, it's not clear, but is that a possible test? Your Honor, it's a test that to some extent has been, is reflected in the divide between the Springdale compulsory case in the Fifth Circuit from 1977 and Rhode Island Hospital from 1978. And it's a test that certainly could be applied where you have 95% of the, excuse me, where you have a regulation that fails because of Medicare or a regulation that fails because of Medicaid, which is what the Springdale and Rhode Island cases were about. Only the Medicare statute made those regulations illegal in those cases, even though you had a dual or Medicaid-only participant challenging. And so in that circumstance, yes, where you have two statutes that say the same thing, I would submit there is no predominance. The, here, the particular rule fails for equal reasons under 1819 and 1919. So I'm not sure how that test could be applied in this particular circumstance. What the Supreme Court said about what 405H means and how it should be interpreted, the arising under clause is where the standing and substantive basis for a claim arises under a particular act. That's how you determine whether it's Medicare or Medicaid. So, and those cases from the Supreme Court, Illinois Council, Ringer and Selphie are more recent than some of these later, earlier decisions. Applying that test would mean where a home is a Medicaid-regulated home. They would have standing to bring a Medicaid challenge on a subsequent basis. And to the extent they also are a Medicare home and are challenging under 1819, they would arise under the Medicare 405H statute, but not otherwise. Can, can, is it your view then that this challenge can stand entirely on its own under the Medicaid Act? It is, Your Honor. That's correct. And I would note that the Supreme Court has gone so far to say that even if courts believe Congress, had they been presented with this, would have, would have wanted to adopt this approach. And in the Rosencrantz case, 16 U.S. 257, where the Supreme Court said, even if it were persuaded, Congress intended to strip jurisdiction, that when it comes to subject matter jurisdiction, a case of mere omission is an omission which courts cannot supply. So at the end of the day, these policy arguments, as a matter of doctrine, cannot take the court to the position that the Sixth Circuit got in Cathedral Rock and the Skimp Association. Yes. You know, one of the things you mentioned in response to a question posed by one of my colleagues, who's the provident, I guess, of the difference between the Medicare Act and the Medicaid Act, and it was unclear to you, Elise, why precisely Congress did not include the jurisdiction, stripping provisions of the Medicaid Act. And you alluded to the fact that Medicaid, unlike Medicare, is primarily state run. But what are we to draw from that in connection with trying to answer this question? Is there any policy reason that the fact that the Medicaid Act and Medicaid is primarily state run, any policy reason that that's back, which help us understand whether there's jurisdiction in this case? Yes, Your Honor. There are various types of disputes that can lead to litigation to which 405H would apply. We're talking about a rulemaking and some of the case law, we've looked at adjudications of enforcement action. But of course, the primary thing Congress was probably thinking about, sorry. Hello? And those cases will be protected by 405H as well. Could you repeat your sentence because we lost you? Oh, I'm sorry. I have a real technical problem here. I'm saying one of the main differences is that Medicaid dollars are dollars held by states. And one of the things that 405H does is it protects the Medicare program for being sued for those dollars outside of the statutory drawn mechanism. When homes sue for dollars under the Medicaid Act, they do so in state court. And I've handled some of those cases. So those cases don't threaten the federal courts and the federal government in the same way in the Medicaid program as they do in the Medicare program, which is another reason why Congress may have included 405H in Social Security and Medicare but not in Medicaid. I see. That's actually very helpful. Thank you. You'll have two minutes for rebuttal and we will now turn to Mr. Connolly. Good morning and may it please the court. Christopher Connolly from the U.S. Attorney's Office on behalf of the government. The district court correctly held that it lacks jurisdiction over plaintiff's claims. We've been discussing some of the reasons for that already during this argument. The plaintiffs here are duly participating facilities. They participate in Medicare and Medicaid. And as a result, this challenge to HHS's final rule is subject to the Medicare Act's claim channeling provisions at 405G and 405H. The Sixth Circuit's decision in Cathedral Rock here is important for understanding why that's the case. And it sets forth rather succinctly the statutory and regulatory bases for finding that the claim channeling provision applies here. The Medicare and Medicaid Act impose common certification and quality of care requirements on nursing facilities. There are very few differences between them and they're limited really to kind of state-specific issues or instances where Medicaid covers individuals who would not otherwise be covered by Medicare. Moreover, when the Secretary finds that a duly certified facility isn't in compliance with any of these requirements, its authority is to impose remedies under both the Medicare and the Medicaid Act. And the regulations provide that the appeals procedures for reviewing determinations by the program are the same procedures. For all of these reasons, as well as for the policy reason that finding otherwise would allow duly participating facilities to essentially plead their way out of the Medicare Act claim channeling provision, it's proper in a situation such as this, where a claim is certainly not Medicaid-specific but is common to both Medicare and Medicaid brought by duly claim channeling provision applies. And once those provisions apply, it's clear under Illinois Council and the Michigan Academy decision that this was the situation where the plaintiffs were required to first bring that claim to the Secretary before it could be brought in the District Court. The no review exception, put simply, doesn't apply because there is no question that notwithstanding the plaintiff's ability to obtain the relief they seek at the administrative level, once those administrative proceedings were completed, they were free to come into District Court at that point and make the arguments that they're attempting to make here. So, for all of those reasons, the court should affirm the District Court's judgment on jurisdictional grounds and, for that reason, not reach the merits. If the court does reach the merits and determines that it would adjudicate those rather than sending it back to the District Court, the final rule here is entitled to Chevron deference. The language of the statute is ambiguous at best, and the interpretation set forth in the final rule is reasonable in light of the language of the statute and the statute's purpose. Judge Park. Yes. Thank you, Counsel. So, I understand the Medicaid Act doesn't incorporate the claim channeling or the jurisdiction stripping provisions, and so your argument, I take it, is that you're asking us to infer based on out-of-circuit case law, based on essentially a policy consideration, that the Medicaid Act should also import these provisions. Is that fair? It's more than just a policy consideration, Your Honor. It's inherent in the way the Medicare and Medicaid Act interact with one another, particularly with respect to duly participating facilities. The challenge here is to a final rule that interprets and governs statutes concerning surveys and investigations. Those surveys and investigations aren't split up into Medicare and Medicaid. Those are the statutes that are going to govern surveys and investigations for duly participating facilities and authorize the Secretary to take action under both Medicare and Medicaid where there's a finding of a violation. But your friend gave a sensible reason why Congress might have wanted to treat the two types of claims differently, namely that Medicaid claims is a program that's grounded more in state than Medicare. But in any event, Congress provided for one and not the other, and I guess I'm just trying to understand what specifically the basis is you're asking us to substitute our judgment for Congress's. Respectfully, Your Honor, the applicable statutes and regulations here create a situation where you don't need to substitute judgment. Cathedral Rock actually acknowledges that when you had a claim that was a pure Medicaid claim or a pure state Medicaid claim, the jurisdiction channeling or the claim channeling provisions in the Medicare Act wouldn't apply. But our argument, and undoubtedly the Medicaid Act doesn't have the same specific provisions, but the argument is still grounded in the statute insofar as particularly for duly participating facilities, there is no distinction between the Medicare Act and the Medicaid Act and what they require, the ways in which the Secretary evaluates compliance with those requirements, and the ways in which the Secretary can impose remedies or relief as a result of the violations of those requirements. For that reason, as a textual matter, notwithstanding the lack of similar language for 405 G and H, it's proper when you're talking about a duly participating facility and a claim that plainly straddles both the Medicare Act and the Medicaid Act to apply those claim channeling provisions consistent with 405 G and H, and Illinois Council's teaching that all claims arising under the Medicare Act must be challenged through the agency. Can I just ask one other question about sort of the origins of some of this case law, in particular the Michigan Association case from the Sixth Circuit and the health equity resources case from the Seventh Circuit? Your adversary argues that those cases were based on an earlier version of the Medicaid Act, and as I understand it, that they're of questionable validity in light of that. Can you address that? Your Honor, to the extent that they're grounded in earlier versions of the Medicaid Act, it seems unclear at best to me why the principles that they enunciate would not nonetheless govern here, particularly with respect to duly participating facilities and claims of this nature. Well, I guess the import would be that to the extent that the statutory text may have changed, the reasoning now of those cases would rest on the policy considerations as opposed to the statute. Well, even to the extent that that's true, certainly a case like Cathedral Rock, I don't believe that counsel is arguing that Cathedral Rock arose under an earlier in time version of the Medicaid Act. And that's a case that expressly not only grounds its holding in the policy consideration, but also points to the statutory and regulatory overlap of the Medicare and Medicaid Act as reasons why for duly participating facilities, the Medicare Act claim channeling provisions apply. Okay. Thank you. This is Judge Kastman. Just to follow up so that I understand, with respect to the jurisdiction over Medicare Act claims, if you're right that the illegal composition of a survey team is not a basis for setting aside any of the penalties, why would a reviewing court ever reach the issue? And if it did, wouldn't it just be purely advisory? Your Honor, to play this out, if there were penalties that were imposed and the nursing center then came into court challenging those penalties, certainly at the administrative stage, HHS has suggested that the improper composition would not be sufficient ground for tampering with an otherwise valid finding. But I'm not sure why or how the district court would bound by that same reasoning. If they were to find, if the district court were to find that as a matter of the plain language of the statute, as plaintiffs argue here, that whenever you have an investigation, you need to have a registered nurse on it. And that as a result, it was an improper agency action to impose the penalties that were imposed without obviously prejudicing whatever some future hypothetical district court would do. It would seem that the district court could point to that as a ground for invalidating the finding, notwithstanding HHS's position at the administrative level that doing so would be inappropriate. On the Chevron deference, it seems somewhat strange for a court to defer to an agency about what the word subsection means. More specifically, can you give me your best authority supporting the notion that Congress intended to delegate interpretation of this word subsection to HHS? Your Honor, as I stand here today, I don't have authority for that proposition. Respectfully, I think that the government's arguments at Chevron step one don't solely turn on the definition of the word subsection. But to the extent that that is relevant, and we do think it's relevant, I don't think it's really a matter of interpretation. It's just kind of plain from the face of the statute and the different ways in which it uses the term subsection. And then with respect to G2, uses interchangeably subsection and paragraph, the language of the statute is simply unclear. That's a finding that you can make without deferring to whatever HHS's interpretation of the term subsection would be. Our argument is not that subsection means some specific thing at all times, but that here subsection is used in different ways to refer to different parts of the hierarchy of the statute in such a way that it's not sufficient to say that the use of subsection in G2 applies across the board to all of the components of subsection G. That's particularly true, again, because G4 has different language about the composition of an investigation team. It allows for a level of flexibility in terms of the personnel that G2 does not necessarily do. And there's good reason for that. And I guess this bleeds into Chevron Step 2, which is that when you're talking about a specific complaint that triggers an investigation, that could be for a whole number of things, both medical and non-medical. And what the states need is the flexibility to compose a team that's going to have the relevant expertise to carry out that investigation. And that's what G4 accomplishes. And finally, a question that I asked your adversary, if we were, hypothetically, and I'm not saying that we will, if we were to find jurisdiction over the Medicaid Act claims, would you agree then that we could review the regulation without reaching the issue of our jurisdiction under the Medicare Act? If the court were to find jurisdiction, I suspect, yes, your honor. I don't think there would be any barrier to that inquiry under the Medicaid Act. Thank you. Judge Laue. Thank you, Judge Kessler. And Ms. Connolly, so can you answer the more or less factual question that may only be available to HHS about the percentage of nursing facilities that qualify as duly participating facilities? Your honor, I don't have those figures in front of me. If the court would like us to submit a happy to do that promptly on the schedule the court would enter. Your honor's percentage based on information from 2014, insofar as I have an understanding of this, it sounds right to me. My understanding is certainly that most facilities are duly participating facilities. Right, right. So it's right that if we were to adopt, for example, this bright line rule from Cathedral Rock, and I described it as bright line, that would apply then to the vast majority of nursing facilities in the circuit. It would apply to the vast majority of nursing facilities. I believe again that that would be correct. But it would, again, it would apply to claims that can be said to arise under the Medicare Act. Cathedral Rock itself acknowledges that at times there are going to be claims that are purely Medicaid claims. And it left open the possibility, and I think suggested as much, that the Medicare Act's claim channeling provisions wouldn't apply. So you could have a duly participating facility that files a purely Medicaid claim. Yes, I think that that's possible. Again, I mean, there's a substantial overlap between the Medicare Act and the Medicaid Act and the obligations that they impose. But there are instances where Medicaid, particularly with state-specific legal issues, or concerning individuals who are covered by Medicaid but not by Medicare, and in those circumstances, even with the Cathedral Rock rule in place, it would appear clear from Cathedral Rock's teachings and the other relevant case law that those claims would be able to proceed absent satisfaction of the claim channeling provisions. And how would a court, and maybe this is a little too hypothetical, but how would a court assess whether it's a purely Medicaid claim as opposed to a claim that masquerades as a Medicaid claim, but in fact, in the context of a duly participating facility, a Medicare claim? Your Honor, I mean, I want to be careful just because I'm not necessarily sufficiently grounded in the intricacies of Medicaid to know when those types of claims might arise. But that's sort of a problem because much of this, it seems to me, relates to the unique features of the Medicaid program versus the Medicare program. You know, we've had a discussion about the providence, or lack thereof, of the jurisdiction stripping provisions in the state aspect of Medicaid. Right. Well, I mean, certainly there are provisions in Medicaid, and I don't have the specific provisions to hand right now, but there are provisions in Medicaid that deal with, you know, rules and obligations imposed by states, or that deal with individuals who are covered by Medicaid but are not covered by Medicare. And those would be situations where a claim, it would be, even with a duly participating facility, I think that the outcome there would be that you're talking about a Medicaid claim. That's clearly not what's happening here, because we're talking about statutes governing surveys and investigations that are applicable to both Medicare and Medicaid, and that authorize the Secretary to take actions under both Medicare and Medicaid. Okay. So, and you heard my question to your adversary about this predominance test. Maybe it's not cleanly applied in the context of this case, but it falls shy of this Brightline test that was articulated in Cathedral Rock. Do you have a, does the government have a view on this predominance test? Is it a viable test? Is it workable? In other words, Your Honor, just so I'm clear, the test would be whether a under Medicaid? Correct. So, yeah. Suppose, for example, that a nursing facility is, consists mainly of Medicaid patients, 95% from Medicare, and the funding comes primarily from state-run Medicaid, and it imposes or files a challenge or whatever. Can we use a predominantly a riser test in the context of that? So, it's a fact, you know, case-by-case, fact-specific test? Your Honor, I suspect it would be possible in some what might make it difficult in terms of individual claims, and this is kind of, I guess, where your hypothetical crosses paths with the situation here, is that, again, when the Secretary undertakes surveys or investigates certain complaints, those arise under both Medicare and Medicaid, and they authorize the Secretary to take action to remedy problems and deficiencies under both Medicare and Medicaid. Well, Ken, if you had a nursing facility, let's say it's just 5% of the nursing facilities that are Medicaid-only, right? So, they are not participating facilities. Those facilities could challenge the final rule in court under 1331. That's your view? If it's a purely Medicaid facility, they're not governed by the Medicare Act. So, I don't see what the basis would be for applying the claim-channeling provisions there. So, but if it's a duly-participating facility and 1% of its funding comes from Medicaid, then it cannot challenge the final rule in court, the jurisdictional stripping provision, again. That's your view? Sorry, and Your Honor, forgive me, you said 1% came from Medicaid. Did you mean 1% came from Medicare? Yes. Your Honor, I think that would be the appropriate way to divide this because at that point, you're talking about a facility whose rights and obligations are arising under both statutes and who are going to be investigated and evaluated by the Secretary under both statutes that are subject to final determinations of the Secretary under both statutes. Okay. Thank you. Mr. Feldman, you'll have two minutes. Thank you, Your Honor. Three quick points on the Medicaid Act. One is that Cathedral Rock simply follows the Sixth Circuit's controlling decision in Michigan Association. It's wrong for the same reason it relies on the old law that's obsolete and doesn't apply this circuit's clear statement doctrine. And second, and ultimately, there's no textual basis for any rule other than the one we propose for the Medicaid Act because asking questions about whether facilities are duly eligible, whether the statutes are identical or predominant are questions that are unanchored in statutory text. I would note though, however, for Judge Loyer, that the predominance test I'd submit, if you look at pages 7A in the brief, will usually come out on the Medicaid side since Medicare only covers the first two months of a patient's resident stay and Medicaid covers the entire long-term stay. Finally, keep in mind that there is not a parade of horribles, that under the Medicaid challenge, we are only talking about rulemaking. Administrative exhaustion will continue to apply as per the regulations and the statute. One note on Illinois Council, which is the government notably said, for I believe the first time ever, that a district court could and should set aside a survey result if the survey was illegal. If this court decides the Illinois Council question on that grounds, we respectfully ask that that be part of the holding so that the benefit and the government cannot have its cake and eat it too. And finally, just to put this into context, we're living in a pandemic and it's more important now than ever for nurses to be on surveys. As the Avon case illustrates, without registered nurses, assessing whether a home is compliant or finding a false negative, like there was with the Byrne and the Avon case, poses real page 292 of the Joint Appendix. It was counterproductive and caused the residents to suffer. Even worse, if that happens today, that's why Congress held the government to the same professionalism standard as the homes, to have registered nurses, and the final rule directly contradicts the act. Judge Katzman, may I? This is Judge Lillian. May I ask you a question? Yes, of course. Mr. Feldman, I've got actually two questions. You heard the government say that ultimately you could challenge, after going through the administrative process, you could, and understanding that in the government's view, in your view, you can't get the relief at the administrative level. You challenge it after going through the administrative process in court. Sir, Your Honor, that is relevant only to the Medicare Act, Illinois Council argument. Again, if that is true, it should be part of the holding, so that actually could be set aside. That has not been the government's position to date, and we cite the government's position in the blue brief on page 21. In Rosewood, MS Health Care, Jewish Home, the government has said repeatedly to other circuits, and one, that illegality in the survey process doesn't affect the outcome of 405G or CMP cause of action. So this would be a change in circuit, excuse me, in law throughout the country and in the government's position. It wouldn't affect the Medicaid Act challenge. This is no different than Illinois Council, where the Supreme Court said the Medicare Act challenge had to proceed through that process because the facilities could test the legality of the rules, as the government suggests for the first time here under the Medicare Act. But the Medicaid Act challenge proceeded under the APA in 1331, as the Seventh Circuit held on remand, and that's what should happen here with the Medicaid Act. And if I might, I've got a second question about 42 CFR 498.4, which is the title of nursing facilities subject to administrative appeals process. What are we to make of that provision, which is not the subject of any challenge, which seems to acknowledge or set forth a theme pursuant to which, if you are a dual participating facility, you've got to go through the administrative process, no matter what? We don't quibble with that, Your Honor. At most, what that means is the initial determinations that are reviewable, like survey results, are subject to normal procedures of finality, ripeness, exhaustion by going to an ALJ and maybe subject to 405B and 405G judicial review. But what doesn't apply and what is the basis of this entire dispute under the Medicaid Act is 405H, and therein lies the difference. 405H does not strip Section 1331 jurisdiction over those questions. That's the state of the law in the Seventh Circuit. Under the health equity resources case, the nursing homes, Medicaid or Medicare, still must fully exhaust under those regulations you point to. However, under the Medicaid Act, where there's standing in a substantive basis under Illinois Council on Remand, the Seventh Circuit has held that an APA challenge like this to rulemaking can also proceed outside of that limited agency review process. By remanding to the district court, you're saying they indicated that? Oh, I'm sorry. No, what I meant by that was that the Seventh Circuit made that as an alternate holding before Illinois Council was reviewed by the Supreme Court and then reaffirmed that position at the Seventh Circuit upon a remand from the Supreme Court. That's correct, Your Honor. Thank you. Thank you, Mr. Feldman. Thank you, Mr. Connolly, for your very strong advocacy. The court will reserve decision.